Mary K. Amadon, D.V.M., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Veterinary Medical Examiners, Respondent

Argued October 17, 1984, before Judges ROGERS and CRAIG and Senior Judge BARBIERI, sitting as a panel of three.

*Peter N. Harrison,* for petitioner.

*Thomas J. Sutrniolo,* Assistant Counsel, with him, *Arthur K. Hoffman,* Assistant Counsel, *Nancy K. Matlowski,* Chief Prosecutor, and *David F. Phifer,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, December 7, 1984:

Mary K. Amadon, a licensed veterinarian since 1939, has appealed from an order of the State Board of Veterinary Medical Examiners (Board) revoking her license. We affirm the Board's order.

On October 18, 1981, the Board issued a citation and notice of hearing charging Dr. Amadon with the violation of the following subsections of Section 21 (3), (8), (9) of the Veterinary Medicine Practice Act (Act), Act of December 27, 1974, P.L. 995, *as amended,* 63 P.S. §§485.21 (3), (8), (9):

(3) The wilful failure to display a license.

. . . .

(8) Failure to keep the equipment and premises of the business establishment in a clean and sanitary condition.

(9) Refusing to permit the board, or duly authorized representatives of the board, to inspect the business premises of the licensee during regular business hours.

The Board's charges were based upon inspections, made as the result of complaints, of the appellant's veterinarian establishment by Ethel Marrow, an investigator for the Bureau of Professional and Occupational Affairs, between 1979 and 1981. A hearing was held before the Board on December 17, 1981. The Commonwealth's case consisted primarily of Ms. Mar-

row's testimony and of photographs taken during some of these inspections.

The Board and Dr. Amadon later negotiated for her to relinquish her license, but she refused because the Board required her to acknowledge that she violated the Act. The Board then issued its adjudication, containing its findings of fact and conclusions of law, and order revoking Dr. Amadon's license to practice veterinary medicine.

Dr. Amadon argued that the Board's findings adverse to her cause were not supported by substantial evidence. After reviewing the record, we are convinced that there is ample evidence to support the Board's findings.

With respect to the Board's charge that Dr. Amadon willfully failed to display her license, the evidence is thin. Ms. Marrow testified that Dr. Amadon's license was not displayed at the time of her first visit on February 14, 1979 and that Dr. Amadon produced it from a desk drawer. Ms. Marrow did not testify further on this issue. Substantial evidence has been defined as more than a scintilla. The proved failure of the appellant to display the license on one occasion is perhaps not more than a scintilla. However, the absence of sufficient evidence supporting only one of several conclusions of malpractice does not require us to modify or set aside the agency's order. *State Real Estate Commission v. Bewley,* 1 Pa. Commonwealth Ct. 85, 272 A.2d 531 (1971).

The Board's principal charges were that the appellant failed to keep her equipment and premises in a clean and sanitary condition and that she refused to permit Board representatives to inspect her quarters. The Board's finding that this charge was made out has firm support in the record.

Regarding her inspection of Dr. Amadon's clinic on February 14, 1979, Ms. Marrow testified:

The floors were filthy, the walls were filthy, the window sills. Her desk was also covered with dirty papers, bottles of medicine. The animals that she had sitting on top of shelves, the cages they weren't clean. They were in a condition which was unfit for any animal to be housed in. Most times I found that the animals had no water, no food.

Ms. Marrow testified that when she visited Dr. Amadon's waiting room on August 9, 1979, she could see some "foliage coming through the windows, thick dirt and dust on the window sills, on the tops of counters, on the desk, bottles of medicine overturned, and the place was just in a complete disarray." When she next inspected Dr. Amadon's clinic on October 18, 1979, she observed that it appeared to her "that Dr. Amadon was really trying to make conscientious effort to improve the practice. She had painted her ceiling, she had cleaned the floors, she had really done a lot of work." However, later on November 5, 1980, she "found the treatment rooms dirty, unsanitary . . . food on the outside of the premises at the bottom of the basement steps. It was a dead cat who appeared to have been operated on at the bottom of the box and a box of raw chicken parts."

With respect to the Board's finding that the appellant refused to allow inspections, the record is clear that Dr. Amadon refused Ms. Marrow's entrance to her premises on August 14, 1980 and on May 28, 1981.

The appellant testified that her waiting room, office, and treatment rooms were merely disorganized and that she had not had time to keep them otherwise. The asserted reason for not allowing inspections was the pressure of other affairs.

There was ample evidence supporting the Board's findings, conclusions, and its action revoking Dr. Amadon's license. Ms. Marrow's first inspection was in February, 1979 and the last testified to was in May, 1981 with unfortunately no improvements in the conditions of the appellant's practice.

Order affirmed.

## ORDER

AND Now, this 7th day of December, 1984, the order of the State Board of Veterinary Medical Examiners in the above-captioned matter is affirmed.